07-3194-ag
Mora v. Mukasey

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2007

Argued: June 2, 2008                    Decided: December 16, 2008

Docket No. 07-3194-ag

_____

JUAN MORA and GUILLERMINA MORA

*Petitioners*,

-v.-

MICHAEL B. MUKASEY,
United States Attorney General, United States Department of Justice,

*Respondent*.

_____

Before:        McLAUGHLIN, SACK, LIVINGSTON, *Circuit Judges*.

Petition for review of a Board of Immigration Appeals decision affirming an Immigration

Judge's denial of applications for adjustment of status.

Denied.

<div style="margin-left:40%">

ROBERT C. ROSS, ESQ., West Haven, CT, *for Petitioners*.

BRIENA L. STRIPPOLI (Jennifer Lightbody, *on the brief*), Office of Immigration Litigation, United States Department of Justice, *for* Jeffrey S. Bucholtz, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., *for Respondent*.

</div>

LIVINGSTON, *Circuit Judge*:

Petitioners Juan and Guillermina Mora, citizens of Mexico, petition for review of a June 26, 2007 decision of the Board of Immigration Appeals ("BIA") affirming the May 2, 2006 decision of Immigration Judge ("IJ") Michael Straus denying their applications for adjustment of status and ordering them to depart the country voluntarily by a specified date, or else become subject to a final order of removal. The petition raises the question whether aliens who are inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) because they entered the United States unlawfully after accruing more than a year of prior unlawful presence are foreclosed from adjusting their status under 8 U.S.C. § 1255(i) on the basis of approved immigrant visa applications. The BIA determined in *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007), that they are. Because we conclude that the *Briones* decision interpreted ambiguous provisions of the immigration laws in a reasonable way, we must defer to it pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and therefore deny the petition.

## BACKGROUND

Juan and Guillermina Mora entered the United States unlawfully in 1994 and 1999 respectively. They left the country together for a trip to Tlapanala, Mexico in April 2002, got married there, and reentered the United States without inspection a month later.

In August 2005, the Moras were served with Notices to Appear charging them with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) because they entered the country without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). The Moras appeared before an IJ and

2

admitted the factual allegations in the Notices to Appear. Specifically, Juan Mora admitted in an affidavit that he unlawfully entered the country in 1994, left for Mexico in 2002, and then returned a month later, entering unlawfully for a second time. Based on an approved worker visa petition in Juan's name with a priority date of April 27, 2001, however, Juan moved to adjust his status to that of an alien lawfully admitted for permanent residence, and Guillermina moved for derivative adjustment of status as Juan's wife. In the alternative, the Moras sought cancellation of removal or voluntary departure.

The IJ found that Juan was inadmissible under 8 U.S.C. § 1182(a)(9)(B) because he had departed the United States for Mexico and reentered the country unlawfully in 2002. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II) (rendering inadmissible an alien who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States"). Based upon this conclusion, the IJ further determined that Juan was ineligible for adjustment of status on the basis of the approved visa application. *See* 8 U.S.C. § 1255(i) (permitting beneficiaries of worker visas to apply for adjustment of status, but allowing Attorney General to grant relief only to aliens who are admissible). As a result, the IJ denied the Moras' applications for adjustment of status. He also rejected their applications for cancellation of removal, but granted their request for voluntary departure, giving the Moras until July 3, 2006 to depart the country, after which time they would become subject to a final order of removal.

The Moras appealed to the BIA from the denial of adjustment of status, but did not challenge the denial of cancellation of removal. The BIA adopted and affirmed the IJ's decision. Although it determined that Juan was more properly deemed inadmissible under section 1182(a)(9)(C)(i)(I), as opposed to section 1182(a)(9)(B), because he entered the United States without inspection after

accruing more than a year of prior unlawful presence, *see* 8 U.S.C. § 1182(a)(9)(C)(i)(I) (rendering inadmissible any alien who "has been unlawfully present in the United States for an aggregate period of more than 1 year . . . and who enters or attempts to reenter the United States without being admitted"), the BIA agreed with the IJ that Juan Mora's inadmissibility made him ineligible for adjustment of status on the basis of the approved visa application. It therefore dismissed the appeal.

Having now become subject to a final order of removal, *see Thapa v. Gonzalez*, 460 F.3d 323, 333 (2d Cir. 2006) ("[A]n order of voluntary departure that includes an alternate order of removal is a final order subject to judicial review."), the Moras petition for review of the BIA's decision denying their applications for adjustment of status.

## DISCUSSION

Because the BIA adopted and modified the IJ's decision, we review the decision of the IJ as modified by the BIA.[1] *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). While factual findings are reviewed for substantial evidence, questions of law and applications of law to undisputed fact are reviewed *de novo*. *Chambers v. Office of Chief Counsel*, 494 F.3d 274, 277 (2d Cir. 2007). Pursuant to *Chevron*, however, we defer to the BIA's interpretation of ambiguous provisions of the immigration laws, unless this interpretation is "'arbitrary, capricious, or manifestly contrary to the statute,'" *Emokah v. Mukasey*, 523 F.3d 110, 116 (2d Cir. 2008) (quoting *Chevron*, 467 U.S. at 844); *see also Delgado v. Mukasey*, 516 F.3d 65, 68 (2d Cir. 2008)

---

[1] Admittedly, the BIA's opinion does not explicitly indicate whether the Board intended to modify the IJ's opinion or merely supplement it by providing an alternative ground for the decision. Our standard of review where the BIA adopts and supplements an IJ opinion is, however, nearly identical to the one here, *see Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006) ("When the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA."), and in the circumstances of this case our decision would not change if we adopted this alternative interpretation of the BIA's opinion.

4

("We . . . accord *Chevron* deference to decisions of the [BIA] interpreting the immigration statutes.").

Under 8 U.S.C. § 1255(i), an alien who has entered the country unlawfully may apply to adjust his immigration status to that of a lawful permanent resident in certain circumstances. *See Delgado*, 516 F.3d at 69. Paragraph (1) of that section provides in relevant part that:

> [A]n alien physically present in the United States . . . who . . . entered the United States without inspection[,] who is the beneficiary . . . of . . . a petition for classification under [8 U.S.C. § 1154 (providing, among other things, for worker visa petitions)] that was filed with the Attorney General on or before April 30, 2001[,] and . . . who, in the case of a beneficiary of a petition for classification . . . that was filed after January 14, 1998, is physically present in the United States on December 21, 2000 . . . may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(i)(1). Paragraph (2), however, allows the Attorney General to "adjust the status of the alien to that of an alien lawfully admitted for permanent residence" only if, *inter alia*, "the alien is eligible to receive an immigrant visa and *is admissible* to the United States for permanent residence," 8 U.S.C. § 1255(i)(2) (emphasis added). To qualify for adjustment of status under section 1255(i), therefore, an alien who has entered the country unlawfully must be "otherwise 'admissible' to the United States." *Delgado*, 516 F.3d at 69 (quoting 8 U.S.C. § 1255(i)(2)(A)).

Whether an alien is admissible is determined by reference to 8 U.S.C. § 1182(a). According to paragraph (6)(A)(i) of that section, "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). In other words, any alien who is present in the country after having entered unlawfully is inadmissible. Additionally, paragraph (9)(C)(i) establishes two more specific prohibitions, stating, in relevant part, that:

5

Any alien who –

> (I) has been unlawfully present in the United States for an aggregate period of more than 1 year, or

> (II) has been ordered removed . . .,

and who enters or attempts to reenter the United States without being admitted is inadmissible.

8 U.S.C. § 1182(a)(9)(C)(i). The introductory language to section 1182(a), however, notes that "*[e]xcept as otherwise provided in this chapter*, aliens who are inadmissible . . . are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a) (emphasis added). This language acts as a "savings clause," allowing admission of otherwise inadmissible aliens where the statute so provides. *Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1241 (10th Cir. 2005).

The Moras concede that they satisfy the criteria for inadmissibility set forth in section 1182(a)(9)(C)(i)(I) because they have been unlawfully present in the United States for more than one year and they departed and reentered the country in connection with their marriage in Mexico. Because section 1255(i) allows the Attorney General to adjust the status of an alien only if that alien is admissible, it would appear the Moras are not entitled to section 1255(i) relief. But the Moras argue that section 1255(i) cannot reasonably be read to foreclose relief to *all* aliens who are inadmissible under section 1182(a). Section 1255(i), specifying the circumstances in which aliens who have entered the country unlawfully may apply to adjust their status, applies *only* to aliens who are "physically present in the United States" and "entered . . . without inspection." 8 U.S.C. § 1255(i)(1). Section 1182(a)(6)(A)(i), however, renders a physically present alien inadmissible if he entered the country unlawfully. As a result, "the plain language of the statute seems to make

6

'entry without inspection' both a qualifying and a disqualifying condition for adjustment of status." *Briones*, 24 I. & N. Dec. at 362. Indeed, "[i]f all aliens unlawfully present are inadmissible as a result of § 1182(a), and admissibility is a condition for § 1255(i)(2)(A) relief, then no one would ever be eligible under § 1255(i)(2)(A)." *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 908 (6th Cir. 2008). The question therefore arises how section 1255(i) should be construed so as not to render it a nullity. That is, can section 1255(i) be read as an implicit waiver of certain grounds for inadmissibility in accordance with the savings clause of section 1182(a), and if so, which ones?

As the BIA has noted, this problem did not exist before the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, 110 Stat. 3009-546. *See Briones*, 24 I. & N. Dec. at 362-63. In the pre-IIRIRA regime, aliens who entered the country without inspection after having been deported could be deemed "inadmissible" depending on the circumstances, and thus barred from adjusting their status under section 1255(i). But aliens who otherwise had entered the country without inspection—whether once or on multiple occasions—were deemed "deportable," not "inadmissible," and so were not barred from adjusting their status under section 1255(i). *See id.* IIRIRA, however, provided for the first time that aliens who entered the country without having been inspected or paroled should be deemed "inadmissible." *See* IIRIRA § 301(c)(1), 110 Stat. 3009-578; *Briones*, 24 I. & N. Dec. at 363. In addition, it added what is now section 1182(a)(9)(C) to define a new and narrower class of inadmissible aliens—those who entered the country unlawfully on more than one occasion. *See* IIRIRA § 301(b)(1), 110 Stat. 3009-576 to -578; *Briones*, 24 I. & N. Dec. at 363.

Shortly before IIRIRA's effective date, the former Immigration and Naturalization Service ("INS") issued a memorandum pertaining to the interplay between the new section 1182(a)(6)(A)(i),

providing that a physically present alien is inadmissible if he entered the country unlawfully, and section 1255(i), specifying the circumstances in which physically present aliens who entered unlawfully might adjust their status. *See* Memorandum from David Martin, General Counsel, INS, to Michael L. Aytes, Assistant Comm'r, Office of Benefits, INS (Feb. 19, 1997), *reprinted in* 74 Interpreter Releases 516-22 (1997) [hereinafter INS Memo]. The INS pointed to the so-called "savings clause" of section 1182(a), *see id.* at 518-19, which, as noted above, states that the categories of aliens enumerated in that section are inadmissible "[*e*]*xcept as otherwise provided in this chapter*," 8 U.S.C. § 1182(a) (emphasis added). The INS interpreted section 1255(i)(1)(A)(i) as falling within the scope of the savings clause, and thus as an implicit waiver of the admissibility prerequisite in the case of aliens who are inadmissible under section 1182(a)(6)(A)(i). *See* INS Memo at 518-22.

The INS's interpretation of the savings clause went some distance toward resolving the tension between section 1255(i), specifying that physically present aliens who entered the country illegally may in certain circumstances apply for adjustment of status, provided they are admissible, and section 1182(a)(6)(A)(i), providing that those who enter the country unlawfully are not admissible. This interpretation, however, did not resolve all questions concerning the relationship between sections 1255(i) and 1182(a). While section 1182(a)(6)(A)(i) applies generally to aliens who are present unlawfully, section 1182(a)(9)(C) applies more specifically to aliens who are present unlawfully *and* who have repeatedly violated the immigration laws – either by being present for an aggregate period of over one year and effecting or attempting to effect an entry or by entering or attempting to enter the United States after having been ordered removed. The question remains whether these more specific grounds for inadmissibility should be deemed implicitly "waived" by section 1255(i) as well.

In *Delgado v. Mukasey*, 516 F.3d 65 (2d Cir. 2008), we recently resolved this issue with respect to 8 U.S.C. § 1182(a)(9)(C)(i)(II), which makes inadmissible "[a]ny alien who . . . has been ordered removed . . . and who enters or attempts to reenter the United States without being admitted." The petitioner there argued that she was eligible for adjustment of status because "by its express language, section 1255(i) is available to aliens who enter the United States without inspection . . . [thus indicating that] the adjustment of status provision cures inadmissibility pursuant to § 1182(a)(9)(C)(i)(II)." *Delgado*, 516 F.3d at 70 (citation, internal quotation marks, and alterations omitted). We rejected this contention and afforded *Chevron* deference to the BIA's determination in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), that an alien who is inadmissible pursuant to section 1182(a)(9)(C)(i)(II) is ineligible for adjustment of status pursuant to section 1255(i). *See Delgado*, 516 F.3d at 72.

In reaching our conclusion in *Delgado*, we noted that the Tenth Circuit in *Padilla-Caldera v. Gonzales*, 453 F.3d 1237 (10th Cir. 2006), and the Ninth Circuit in *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), held that aliens who are inadmissible under section 1182(a)(9)(C)(i)(I)—those who entered the country unlawfully more than once, but who never were subject to orders of removal—are eligible for section 1255(i) relief. *See Delgado*, 516 F.3d at 70-71. We distinguished *Padilla-Caldera* and *Acosta* primarily on the ground that the aliens in those cases reentered the country illegally after having been unlawfully present in the United States for more than one year, but had not done so after having been removed, as had the petitioner in *Delgado*. *See id.* at 71. That is, we indicated that subclauses (I) and (II) of section 1182(a)(9)(C)(i) might be treated differently for purposes of applying section 1255(i). We therefore left open the question raised here—whether an alien who is inadmissible under section 1182(a)(9)(C)(i)(I) may apply for section 1255(i) relief.

9

The Moras rely extensively on *Padilla-Caldera* and *Acosta* to argue, much like the petitioner in *Delgado*, that because section 1255(i) expressly makes adjustment of status available to aliens who are present in the country unlawfully, it implicitly waives section 1182(a)(9)(C)(i)(I) as a ground for inadmissibility. We are not persuaded. First, *Acosta* no longer appears to be good law. In reaching its decision, the *Acosta* court noted that it was constrained by the prior Ninth Circuit case of *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), *overruled by Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227 (9th Cir. 2007), which held that Section 1255(i) relief is available to aliens who are inadmissible under section 1182(a)(9)(C)(i)(II). *See Acosta*, 439 F.3d at 554 ("*Perez-Gonzalez* appears to control the issue now before us."). *Perez-Gonzalez*, however, came down before the BIA decided *Torres-Garcia*. The *Perez-Gonzalez* court therefore did not base its decision on the application of the *Chevron* doctrine to a precedential agency decision. *See Perez-Gonzalez*, 379 F.3d at 793-94. Moreover, in *Torres-Garcia*, the BIA ultimately rejected the Ninth Circuit's position that an alien who is inadmissible under section 1182(a)(9)(C)(i)(II) may apply for adjustment of status under section 1255(i). *See Torres-Garcia*, 23 I. & N. Dec. at 873 ("With all due respect, we believe the Ninth Circuit's analysis . . . contradicts the language and purpose of the Act . . . ."). And, the Ninth Circuit subsequently overruled *Perez-Gonzalez* and granted *Chevron* deference to the BIA's conclusion in *Torres-Garcia*. *See Gonzales*, 508 F.3d at 1242. We therefore do not find *Acosta* persuasive.

Reliance on the Tenth Circuit's decision in *Padilla-Caldera* is equally problematic. The court there recognized that the immigration laws are ambiguous as to whether an alien subject to section 1182(a)(9)(C)(i)(I) may apply to adjust his status under section 1255(i), *see Padilla-Caldera*, 453 F.3d at 1241, but noted that the only agency guidance on the question at the time was an internal INS memorandum to which the court did not owe "rigorous deference," *id.* at 1244. Like the Ninth

Circuit in *Perez-Gonzalez* and *Acosta*, the Tenth Circuit sought to divine Congress's intent without a clear indication of how the agency would resolve the question. *See id.* at 1241.

We are in a substantially different position. Subsequent to the Tenth Circuit's decision in *Padilla-Caldera* and the BIA's rejection of the Moras' appeal in this case, the agency decided *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007), in which it determined for the first time in a published opinion that, even though aliens who are inadmissible under section 1182(a)(6)(A)(i) may be eligible for adjustment of status under section 1255(i) by operation of section 1182(a)'s savings clause, aliens who are inadmissible also under section 1182(a)(9)(C)(i)(I) are not. *See Briones*, 24 I. & N. Dec. at 365, 370-71. As a result, the issue before us is whether, in accordance with *Chevron*, we must defer to the BIA's interpretation of the immigration laws. *See Delgado*, 516 F.3d at 68-69; *see also Ramirez-Canales*, 517 F.3d at 908-09 ("As a precedential opinion, *Briones* is the type of case-by-case adjudication giving meaning to ambiguous statutes to which we owe deference. We therefore review the Board's interpretation for reasonableness [under *Chevron*]." (citation and footnote omitted)). Unlike the Tenth Circuit in *Padilla-Caldera*, we are not free to apply our independent construction of the relevant statutes unless we first determine that the statutes are unambiguous, or that the agency's construction is untenable. *See, e.g.*, *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir. 2000) ("[W]here the relevant statutory provision is silent or ambiguous, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'" (quoting *Chevron*, 467 U.S. at 843-44)).

The statutory language at issue here is certainly ambiguous. As previously noted, a literal reading of section 1255(i) threatens to render the statute a nullity, and so it is necessary to read the statute as implicitly waiving unlawful presence as a ground for inadmissibility in certain circumstances. *See, e.g.*, *Trichilo v. Sec'y of Health & Human Servs.*, 823 F.2d 702, 706 (2d Cir.

1987) ("[W]e will not interpret a statute so that some of its terms are rendered a nullity."). But whether it should be read as waiving inadmissibility only under the general section 1182(a)(6)(A)(i), or whether it should be read as waiving inadmissability under the more specific section 1182(a)(9)(C)(i)(I) as well, cannot be inferred clearly from the text of the immigration laws alone. *See Ramirez-Canales*, 517 F.3d at 908 ("[I]n resolving this conflict the terms of these statutes are amenable to multiple interpretations . . . ."). Accordingly, "[t]he precise reach of section 1255(i)(1)(A)(i) is an implicit statutory ambiguity the executive branch is authorized to fill." *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005). The question therefore becomes whether the BIA's interpretation in *Briones* is "'arbitrary, capricious, or manifestly contrary to the statute.'" *See Emokah*, 523 F.3d at 116 (quoting *Chevron*, 467 U.S. at 844). It is not.

In *Briones*, the BIA offered three main reasons to interpret section 1255(i) as allowing aliens covered only by section 1182(a)(6)(A)(i), but not aliens covered by section 1182(a)(9)(C)(i)(I) as well, to apply for adjustment of status. First, it noted that the purpose of section 1182(a)(9)(C) generally "was to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed." *Briones*, 24 I. & N. Dec. at 358. This is evidenced by the fact that aliens covered by section 1182(a)(9)(C) are a subset of those covered by section 1182(a)(6)(A)(i), thus suggesting that Congress went out of its way to distinguish between repeat and first-time offenders. *See id.* at 365-66. According to the agency, the inclusion of section 1182(a)(9)(C) in the immigration laws, as well as other provisions targeting recidivists, "reflects a clear congressional judgment that . . . repeat offenses are a matter of special concern and that recidivist immigration violators are more culpable . . . than first-time offenders." *Id.* at 371.

12

Second, the BIA observed that even in the pre-IIRIRA regime, certain aliens who reentered the country after having been deported—those who fall under the current section 1182(a)(9)(C)(i)(II)—were not eligible for adjustment of status under section 1255(i). *See id.* at 366-67. Hence, the agency concluded, applying section 1182(a)'s savings clause to section 1182(a)(9)(C)—which "define[s] a *unitary* ground of inadmissibility that may be predicated on various types of conduct," *see id.* at 367, thus indicating that sections 1182(a)(9)(C)(i)(I) and (II) should not be treated differently for purposes of applying section 1255(i)—would make adjustment of status available to a large class of aliens who *never* were entitled to it. *Id.* at 366-67. The BIA suggested that it would be "an unwarranted leap" to presume that Congress intended such a result. *Id.* at 367.

Third, the agency noted that "where Congress has extended eligibility for adjustment of status to inadmissible aliens (in other words, where Congress has 'otherwise provide[d]' within the meaning of the savings clause)" it has generally done so "unambiguously, either by negating certain grounds of inadmissibility outright or by providing for discretionary waivers of inadmissibility, or both." *Id.* at 367 (alteration in original). For example, Congress enacted special remedial legislation in the late 1990's making adjustment of status relief available to certain Cuban, Central American, and Haitian aliens who were unlawfully present in the United States but, with certain specified exceptions, otherwise admissible. *See id.*; *see also* Haitian Refugee Immigration Fairness Act of 1998, Pub. L. No. 105-277, tit. IX, § 902(a), 112 Stat. 2681-538, 2681-538 (codified as amended at 8 U.S.C. § 1255 note); Nicaraguan Adjustment and Central American Relief Act, Pub L. No. 105-100, tit. II, § 202(a), 111 Stat. 2193, 2193-94 (1997) (codified as amended at 8 U.S.C. § 1255 note). When it realized that many of the aliens to whom it sought to give relief might be barred from

13

adjusting their status because of IIRIRA, Congress passed amendments that explicitly gave the Attorney General discretion to waive section 1182(a)(9)(C) as a ground for inadmissibility with regard to those aliens. *See Briones*, 24 I. & N. Dec. at 368; *see also* LIFE Act Amendments of 2000, Pub. L. No. 106-554, div. B, tit. XV, § 1505(a), (b), 114 Stat. 2763A-324, 2763A-326 to -327 (codified as amended at 8 U.S.C. § 1255 note). This, the BIA concluded, "demonstrates that when Congress wants to make adjustment of status available to aliens despite their inadmissibility under section [1182(a)(9)(C)], it knows how to do so." *Briones*, 24 I. & N. Dec. at 368. The BIA observed also that when Congress passed the amendments permitting this discretionary waiver of inadmissibility, it also modified section 1255(i) to extend the filing deadline for qualifying visa petitions. But it did not remove section 1182(a)(9)(C) as an obstacle to adjustment of status under section 1255(i), thus showing that Congress intended to foreclose aliens who repeatedly violate the immigration laws from adjusting their status. *Id.*

We find the BIA's reasoning not to be arbitrary, capricious, or manifestly contrary to statute. As the agency's analysis indicates, the language, structure, and lineage of the relevant statutes reasonably give rise to the inference that Congress considers aliens who repeatedly enter the country unlawfully to be more culpable than one-time offenders, and therefore to be less deserving of relief under section 1255(i). Hence, we do not think it is unreasonable for the agency to interpret section 1255(i) as extending relief to aliens who are inadmissible under section 1182(a)(6)(A)(i), but not to those who are inadmissible also under section 1182(a)(9)(C)(i)(I). Notably, the Fifth and Sixth Circuits have applied *Chevron* to this interpretation of section 1255(i) and reached the same result. *See Ramirez-Canales*, 517 F.3d at 910 ("We cannot say that the Board's conclusions [in *Briones*] were unreasonable in light of its careful and well-supported arguments. We therefore owe deference

14

to the Board's interpretation."); *Mortera-Cruz*, 409 F.3d at 255-56 (granting *Chevron* deference in pre-*Briones* case to agency determination that alien subject to section 1182(a)(9)(C)(i) was not eligible to adjust status under section 1255(i)). We hereby join them in affording *Chevron* deference to the agency's conclusion that an alien who is determined to be inadmissible under section 1182(a)(9)(C)(i)(I) is not eligible to adjust his status pursuant to section 1255(i).

Because the Moras do not dispute that Juan Mora is inadmissible pursuant to section 1182(a)(9)(C)(i)(I), and because the BIA's determination that such inadmissibility precludes section 1255(i) relief was reasonable under *Chevron*, the agency did not err in denying the Moras' applications for adjustment of status. Accordingly, the petition for review is **DENIED**.