NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2012
Decided January 31, 2013

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1982

| | |
|---|---|
| HEZEKIAH ADEGBOYEGA BABINGTON-ASHAYE, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A018 313 957 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent*. | |

## O R D E R

Nigerian citizen Hezekiah Babington-Ashaye applied for United States citizenship five years after becoming a permanent resident. He was placed in removal proceedings when immigration authorities concluded that his application to naturalize includes information about his marriages and children which conflicts with disclosures in earlier, successful petitions for a change in status and permanent residency. An immigration judge found that Ashaye (the surname the petitioner uses) had procured benefits by "willfully misrepresenting a material fact" in those earlier submissions, *see* 8 U.S.C. § 1182(a)(6)(C)(i), and ordered him removed. The Board of Immigration Appeals upheld that determination, and Ashaye petitions for review.

Ashaye was living in the United States with a Nigerian woman and their three children when he applied for naturalization in August 2006. He identified that woman as his wife, Iyabo Ashaye, gave her maiden name as Sosimi, and said they had been married since November 18, 1999. He also disclosed a prior marriage in 1970 to "Joyce Ashaye," a United States citizen, and stated that the marriage had ended on August 12, 1999, when Joyce died. He listed five children—two born in the United States in the early 1970s and three born in Nigeria between 1985 and 1992—and averred that he never had "given false or misleading information to any U.S. government official while applying for any immigration benefit."

Ashaye, who was 60 years old and fluent in English when he applied for naturalization, had been a permanent resident since September 2001. He gained that status through a two-step process. First, in May 2000 he submitted to the former Immigration and Naturalization Service an I-360 petition (officially called a "Petition for Amerasian, Widow or Special Immigrant") requesting that his immigration status be changed to "widower of a U.S. citizen who died within the past 2 years." An alien may be classified as an "immediate relative" of a deceased United States citizen if (1) the couple was married for at least two years, (2) they were not legally separated when the citizen spouse died, (3) the alien files an I-360 petition within two years of the citizen spouse's death, and (4) the alien has not remarried. *See* 8 U.S.C. § 1151(b)(2)(A)(i), 8 C.F.R. § 204.2(b)(1); *Lockhart v. Napolitano*, 573 F.3d 251, 256–57 (6th Cir. 2009). Ashaye wrote that he had been married only once, to Joyce, and did not mention his second wife, Sosimi. He also listed only two of his five children—the two born to Joyce in the United States in the early 1970s—and ignored other questions on the form asking when he had lived together with Joyce and whether they were legally separated when she died. Ashaye's I-360 petition was approved in September 2000, and three months later he submitted an I-485 petition requesting that his immigration status be adjusted to permanent resident based on his designation as Joyce's immediate relative. Ashaye again listed only his two children with Joyce, and when asked for his marital status he marked that he was "widowed" and left blank a box that asked if he was "married." His I-485 form was approved in September 2001.

After Ashaye had submitted his naturalization application in 2006, he was interviewed under oath by an immigration officer. Ashaye explained that he had entered the United States in 1968 as a student, married Joyce and become a permanent resident in 1970, but returned to Nigeria in 1975. Joyce and their two children joined him in Nigeria in 1976, Ashaye said, and then returned to the United States in 1979. When he tried visiting Joyce in the United States in 1984, he was denied entry and lost his status as a permanent resident because he had been away for more than three years. Joyce later visited Nigeria, though, and told him she was sick and no longer could have children. She also had said, according to Ashaye, that he could have children with another woman so long as he did not

marry her before Joyce died. Ashaye met and began living with Sosimi in 1985, and over the next seven years she gave birth to the three children Ashaye had omitted from his I-360 and I-485 petitions. He told the interviewer that Joyce had been aware of his new children, and that after 1984 he had used visitor's visas to visit her about once per year.

When the immigration officer confronted Ashaye about the discrepancies in his paperwork, he asserted that when completing the I-360 and I-485 petitions he had read those forms as "only asking about Joyce" and never thought it necessary to mention Sosimi or their three children. He also said that the lawyer helping him with the petitions had not asked if he remarried after Joyce's death. Finally, Ashaye insisted that he had not intended to provide misleading information and had not thought that disclosing his marriage to Sosimi would make him ineligible for adjustment of his status.

The United States Citizenship and Immigration Service denied Ashaye's naturalization application in May 2007 and simultaneously issued a Notice to Appear charging that he is subject to removal. The notice alleges that Ashaye is removable because he willfully had misrepresented a material fact to procure his 2001 adjustment of status, *see* 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C)(i), and because he did not have a valid nonimmigrant visa when he adjusted his status, *see id.* §§ 1227(a)(1)(A), 1182(a)(7)(B)(i)(II).

At a merits hearing before an immigration judge, Ashaye further explained his personal history and contradicted some of his previous statements. At one point he said that Joyce and their children had remained in the United States when he went to Nigeria in 1975, and that he next saw them when he visited the United States for one month in 1979. He later asserted, repeating his claim to the immigration officer, that Joyce and their children had lived with him in Nigeria from 1976 to 1979. Ashaye also testified—this time contradicting a claim to the immigration officer—that after 1984 he had not returned to the United States until April 1999 when he was obtained a visitor's visa by telling the American embassy in Nigeria that he needed to see his sick wife. He explained that he attended Joyce's funeral before returning to Nigeria in October to avoid overstaying his visa and to show Sosimi that he had not abandoned her. But on October 24, Ashaye continued, he had reentered the United States without Sosimi and has not left the country since that time.

The immigration judge asked Ashaye how he could have married Sosimi in Nigeria on November 18, 1999, if he was in the United States at that time. Ashaye labeled the ceremony a "proxy marriage" and said it was valid under Nigerian law even though he did not attend. He explained that during his brief return to Nigeria in October 1999 he had arranged the marriage through a Nigerian registry, and following the ceremony had considered himself married to Sosimi. Ashaye added, however, that after the proxy marriage he did not see Sosimi until she joined him in the United States in 2001.

Ashaye also offered the immigration judge a variant of his earlier explanation for starting the second family omitted from his I-360 and I-485 petitions. He now asserted that Joyce told him she would not want more children even if she was not sick, and begged him to pursue another woman. At first he said he had concealed his children with Sosimi because he was embarrassed that they had been born out of wedlock, but later he changed his story and asserted that his lawyer had inquired only about his two children with Joyce. Ashaye repeated that counsel never asked if he had remarried following Joyce's death, yet the lawyer who had helped with the I-360 and I-485 petitions also represented Ashaye at the merits hearing and did not question him about the preparation of those documents or try to bolster the inference that Ashaye's discussions with the lawyer explain the inaccurate or incomplete answers on the forms.

The immigration judge ruled that Ashaye is removable under § 1182(a)(6)(C)(i) because, in his I-360 and I-485 petitions, he had willfully concealed his marriage to Sosimi and their three children in order to be classified as Joyce's immediate relative and again become a permanent resident. The judge rejected as not credible Ashaye's attempts to explain away the omissions as honest mistakes, and also concluded that those omissions were material because accurate information would have influenced whether to grant benefits. In his written decision, however, the judge stated incorrectly that Sosimi had given birth to some of Ashaye's children after their 1999 marriage. The judge did not decide whether Ashaye also is removable on the additional ground that he lacked a valid nonimmigrant visa when he adjusted his status.

Ashaye changed tactics when he challenged the immigration judge's decision before the Board of Immigration Appeals. Although he maintained that his failure to disclose his remarriage and other children had not been willful, he now argued that his claim to be Joyce's widower actually had been *true* because he was *not* married to Sosimi when he submitted his I-360 and I-485 petitions. Ashaye explained that Nigeria no longer recognizes proxy marriages and neither will immigration officials in the United States until a proxy marriage has been consummated *after* the ceremony. *See* 8 U.S.C. § 1105(a)(35); *Matter of B*, 5 I. & N. Dec. 698, 699 (BIA 1954). In support Ashaye submitted one page from the Foreign Affairs Manual which says that, in Nigeria, "proxy marriages have ceased to be valid but still occur." The Board declined to consider that State Department source, however, because Ashaye had not given it to the immigration judge. The Board thus concluded that Ashaye had failed to develop a record concerning when his second marriage was consummated or whether Nigeria recognized that marriage. And given the record developed before the immigration judge, the Board accepted the judge's finding that Ashaye lacked credibility and willfully had misrepresented his marital status and number of children. The Board also agreed that those falsehoods were material and concluded that Ashaye had failed to rebut a presumption that his misrepresentations enabled him to obtain immigration benefits. The

Board acknowledged the immigration judge's misstatement that Sosimi had given birth after the couple's proxy marriage, but stated that the mistake had no effect on the outcome.

Because the Board embraced yet supplemented the immigration judge's ruling, we review both decisions. *See, e.g., Wood v. Mukasey*, 516 F.3d 564, 568 (7th Cir. 2008). We must uphold the immigration courts if substantial evidence supports the denial of relief. *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011); *Ogayonne v. Mukasey*, 530 F.3d 514, 518–19 (7th Cir. 2008).

An alien is subject to removal under 8 U.S.C. § 1182(a)(6)(C)(i) if the government can prove four elements by clear and convincing evidence: (1) the alien misrepresented or concealed some fact; (2) he did so willfully; (3) the fact was material; and (4) the alien obtained an immigration benefit because of the misrepresentation or concealment. *Kalejs v. INS*, 10 F.3d 441, 446 (7th Cir. 1993); *Emokah v. Mukasey*, 523 F.3d 110, 116–18 (2d Cir. 2008); *Monter v. Gonzales*, 430 F.3d 546, 553–57 (2d Cir. 2005). Proof of materiality raises a presumption that the misrepresentation led to benefits, and to rebut that presumption the alien must prove by a preponderance of the evidence that truthful disclosures would not have altered the award of benefits. *Kalejs*, 10 F.3d at 446; *Emokah*, 523 F.3d at 117.

In this court Ashaye makes several arguments, none of them persuasive. He first contends that the immigration courts should have found that his failures to disclose Sosimi or their three children were not willful because, he insists, his explanation for those omissions was "detailed, consistent, and believable." But we will not overturn credibility assessments except in "extraordinary circumstances," *Xiao v. Mukasey*, 547 F.3d 712, 717 (7th Cir. 2008), *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 (7th Cir. 2007), which this case does not come close to presenting. Ashaye's testimony—including his assertions that Joyce encouraged him to have children with another woman and that his lawyer never asked about new children and relationships he had after returning to Nigeria in 1975—was implausible, and amply supports the conclusion that he deliberately concealed his second family from the INS. *See Toribio-Chavez v. Holder*, 611 F.3d 57, 63 (1st Cir. 2010) (explaining that element of "willfulness" in 8 U.S.C. § 1182(a)(6)(C)(i) is satisfied by finding that misrepresentation was deliberate and voluntary).

Ashaye also argues that he is not removable under § 1182(a)(6)(C)(i) because, he says, he would have received immigration benefits even if he *had* disclosed his second marriage. This argument rests on his current position that his marriage to Sosimi was not valid under Nigerian or United States law when he failed to disclose it on the I-360 and      I-485 petitions. But that contention is supported only by new information that Ashaye first submitted to the Board: The immigration judge never explored whether Ashaye's proxy marriage was invalid because Ashaye was insisting then that the marriage *was* valid. The

Board declined to consider Ashaye's new information, as it was free to do, *see* 8 C.F.R. § 1003.1(d)(3)(iv); *Long-Gang Lin. v. Holder*, 630 F.3d 536, 545 (7th Cir. 2010); *Matter of Annang*, 14 I. & N. Dec. 502, 503 (BIA 1973) (explaining that law of a foreign country is a question of fact), thus leaving intact his uncontroverted testimony that he was legally married to Sosimi after the 1999 ceremony.

Ashaye last complains that the immigration judge should have delayed his merits hearing to allow him to apply for adjustment of status based on an I-130 petition his daughter with Joyce (a citizen) filed to designate him as her immediate relative. But not only is that claim unexhausted because of Ashaye's failure to raise it before the Board, *see* 8 U.S.C. § 1252(d)(1), it is frivolous. The immigration judge twice adjourned Ashaye's merits hearing in part so that he could seek adjustment through his daughter, and when the hearing commenced he told the judge two times that he was no longer seeking that adjustment.

Accordingly, we DENY Ashaye's petition for review.