FILED
United States Court of Appeals
Tenth Circuit

**July 27, 2009**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MIGUEL HERRERA-CASTILLO,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.[*]

No. 08-9538

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE BOARD OF IMMIGRATION APPEALS
(Agency No. A95 428 610)**

---

*Submitted on the briefs[**]:*

John Elliott Reardon, Glenwood Springs, Colorado, for Petitioner.

Anh-Thu P. Mai-Windle, Senior Litigation Counsel, and Karen Y. Stewart,
Attorney, Office of Immigration Litigation, Civil Division, United States
Department of Justice, Washington, District of Columbia, for Respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Respondent
requests that Eric H. Holder, Jr. be substituted for Michael Mukasey as the
respondent in this case.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Before **LUCERO**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Miguel Herrera-Castillo (Herrera) seeks review of a Board of Immigration Appeals decision finding him ineligible for adjustment of status. Exercising jurisdiction under 8 U.S.C. § 1252(a), we DENY the petition for review.

## I. Background

Herrera is a native and citizen of Mexico who entered the United States without inspection in November 1999. In 2003, the Department of Homeland Security commenced removal proceedings against Herrera because his presence violated the Immigration and Nationality Act (INA).[1] Herrera, however, claimed eligibility for adjustment of status to that of lawful permanent resident under 8 U.S.C. § 1255(i) based on his April 2001 marriage to a United States citizen.[2]

In September 2006, an immigration judge found Herrera inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i)(II)[3] and ineligible for adjustment of status under

---

[1] The INA is codified under Title 8 of the United States Code. For purposes of convenience here, we cite only to the latter. Thus, INA § 242(a) is cited as 8 U.S.C. § 1252(a); INA § 245(i) is cited as 8 U.S.C. § 1255(i); and INA § 212(a)(9) is cited as 8 U.S.C. § 1182(a)(9).

[2] Section 1255(i) permits aliens who entered the United States without inspection to apply for adjustment of status to that of lawful permanent resident provided they meet certain requirements.

[3] Under § 1182(a)(9)(B)(i)(II), an alien who has been unlawfully present in
(continued...)

§ 1255(i). Nonetheless, the judge granted a waiver of inadmissibility under § 1182(a)(9)(B)(v) after concluding Herrera's removal would cause extreme hardship to his wife and child.[4]

The government appealed this decision to the Board of Immigration Appeals (BIA). The BIA affirmed the immigration judge's determination that Herrera's inadmissibility under § 1182(a)(9)(B)(i)(II) prevented his adjustment of status under § 1255(i) to that of lawful permanent resident. But the BIA reversed the immigration judge's determination that Herrera qualified for a § 1182(a)(9)(B)(v) inadmissibility waiver. Herrera then filed this petition for review.

## II. Analysis

On appeal, Herrera argues the BIA: (1) erred in finding that inadmissibility under § 1182(a)(9)(B)(i)(II) barred his adjustment of status to that of lawful permanent resident under § 1255(i); (2) violated equal protection when it denied his adjustment of status petition; and (3) erred in reversing the immigration

---

[3](...continued)
the United States for more than one year is inadmissible and may only apply for admission ten years after departure or removal.

[4] Immigration judges may waive inadmissibility if refusing an alien's admission would result in "extreme hardship" to the alien's spouse, parent, or child residing in the United States. 8 U.S.C. § 1182(a)(9)(B)(v).

judge's § 1182(a)(9)(B)(v) extreme hardship waiver. We address each argument in turn.[5]

## A. Adjustment of Status

Herrera's primary challenge is to the BIA's determination that, absent a waiver, his inadmissibility under 8 U.S.C. § 1182(a)(9)(B)(i)(II) prevents an adjustment of status under 8 U.S.C. § 1255(i). Because our jurisdiction extends to "constitutional claims or questions of law," § 1252(a)(2)(D), this argument is properly before the court.

Section 1182(a)(9)(B)(i)(II) states that an alien who "has been unlawfully present in the United States for one year or more . . . is inadmissible," and may only apply for admission ten years after departure or removal. Section 1255(i), however, permits certain aliens who entered the United States illegally to adjust

---

[5] The government has filed a motion to dismiss this appeal for failure to prosecute because Herrera missed filing his brief by the original deadline. *See* Fed. R. App. P. 31(c) (allowing an appellee to move for dismissal if the appellant fails to file a timely opening brief).

The untimely filing of a brief is not a jurisdictional defect and we have discretion to excuse a late filing. *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005); *Hutchinson v. Pfeil*, 211 F.3d 515, 517 n.1 (10th Cir. 2000). Indeed, absent an allegation by the opposing party that it suffered prejudice because of the delay, we generally allow such filings. *See Burnham*, 403 F.3d at 712 (holding that a party could file its brief approximately two months late). The government has not alleged any prejudice from this delay and we exercise our discretion to permit the late filing. The motion to dismiss for failure to prosecute is therefore denied.

their status to that of lawful permanent residents.[6]  Herrera concedes his inadmissibility under § 1182(a)(9)(B)(i)(II), but argues he is nevertheless eligible for a § 1255(i) adjustment of status.

Although our circuit has not addressed the interplay of these specific statutes, the BIA has held that, absent a waiver, aliens inadmissible under § 1182(a)(9)(B)(i)(II) do not qualify for a § 1255(i) adjustment of status.  *See In re Lemus-Losa*, 24 I. & N. Dec. 373 (BIA 2007).  The government argues the BIA's construction of §§ 1255(i) and 1182(a)(9)(B)(i)(II) in *Lemus-Losa* is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and Herrera's appeal therefore fails.  We agree.

We review BIA legal determinations de novo.  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).  We defer, however, to BIA constructions of immigration statutes when those statutes are "silent or ambiguous" on the question at issue and the BIA's reading is neither "arbitrary, capricious, [n]or

---

[6]  The statute provides in relevant part that:

> [A]n alien physically present in the United States . . . who . . . has entered the United States without inspection[,] who is the beneficiary . . . of . . . a petition for classification under [8 U.S.C. § 1154] that was filed with the Attorney General on or before April 30, 2001[,] and . . . who, in the case of a beneficiary of a petition for classification . . . that was filed after January 14, 1998, is physically present in the United States on December 21, 2000 . . . may apply to the Attorney General for adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

§ 1255(i)(1).

manifestly contrary to the statute." *See Chevron,* 467 U.S. at 844, 842–45; *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Upon review, we conclude §§ 1255(i) and 1182(a) are ambiguous and that the BIA's construction of them in *Lemus-Losa* was reasonable. We thus defer to *Lemus-Losa*'s conclusion that inadmissibility under § 1182(a)(9)(B)(i)(II) prevents adjustment of status under § 1255(i).

### 1. Ambiguity

We need not wrestle much with whether §§ 1255(i) and 1182(a) are ambiguous for *Chevron* purposes. As explained below, applying the statutes' plain language would render § 1255(i) a nullity. *See Mora v. Mukasey*, 550 F.3d 231, 237–38 (2d Cir. 2008). Unable to rely on the statutes' plain language, therefore, we cannot "ascertain[ whether] Congress had an intention on the precise question at issue." *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 447–48 (1987) (quoting *Chevron*, 467 U.S. at 843 n.9).

Paragraph (1) of § 1255(i) provides that an alien who "entered . . . without inspection" may apply to adjust his immigration status to that of a lawful permanent resident. § 1255(i)(1). Paragraph (2), however, permits the Attorney General to "adjust the status of the alien to that of an alien lawfully admitted for permanent residence" only if, among other things, "the alien . . . *is admissible* to the United States for permanent residence." § 1255(i)(2)(A) (emphasis added).

A problem immediately arises because § 1182(a) defines aliens who enter the United States without inspection as *in*admissible. *See* § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted . . . is inadmissible.").[7] Thus, although § 1255(i)(1) permits aliens who "entered . . . without inspection" to apply for adjustment of status, § 1255(i)(2)(A)'s requirement that such aliens also be "admissible" means none of them will qualify absent a waiver. *See Mora*, 550 F.3d at 235; *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 908 (6th Cir. 2008). Put another way, a plain reading of the statutes would make entry without inspection "both a qualifying and a disqualifying condition for adjustment of status." *In re Briones*, 24 I. & N. Dec. 355, 362 (BIA 2007).[8]

---

[7] The provision of § 1182(a) cited here, paragraph (6)(A)(i), is the statute's general inadmissibility provision. But § 1182(a) also has more specific inadmissibility provisions that apply to particular subgroups—such as the § 1182(a)(9)(B)(i)(II) provision applicable to aliens (like Herrera) who have accrued a certain amount of time in the country illegally.

[8] The apparently conflicting provisions result from Congress's adoption of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546. *See Briones*, 24 I. & N. Dec. at 362–63.

In the pre-IIRIRA regime, aliens who entered the country without inspection after having been deported could be deemed "inadmissible" depending on the circumstances, and thus barred from adjusting their status under § 1255(i). But aliens who otherwise had entered the country illegally were deemed "deportable," not "inadmissible," and so were not barred from adjusting their status under § 1255(i). *See id.* The IIRIRA, however, declared that aliens who entered the country without having been inspected or paroled are deemed "inadmissible." *See* IIRIRA § 301(c)(1), 110 Stat. 3009-578; *Briones*, 24 I. & N. Dec. at 363.

Applying the plain language of the statutes in this situation risks rendering § 1255(i) a nullity. But this is unacceptable here, as nullifying § 1255(i) would "frustrate" Congress's intent rather than "give [it] practical effect." *See United States v. Heckenliable*, 446 F.3d 1048, 1051 (10th Cir. 2006). Not wanting to read § 1255(i) as a nullity but unable to infer from the statutory language the way in which § 1255(i) implicitly waives unlawful presence as a ground for inadmissibility, we find the statute ambiguous. *See Mora*, 550 F.3d at 237–38; *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005) ("The precise reach of section 1255(i)[] is an implicit statutory ambiguity the executive branch is authorized to fill.").

## 2. BIA Reasonableness

To avoid rendering § 1255(i) a nullity, the BIA reads it as an implicit waiver of inadmissibility under § 1182(a), but *only* for those aliens who fall under paragraph (6)(A)(i) of the statute—i.e., § 1182(a)'s general inadmissibility provision. *See* § 1182(a)(6)(A)(i) (stating that "[a]n alien present in the United States without being admitted . . . is inadmissible."); *Briones*, 24 I. & N. Dec. at 364–65; *Lemus-Losa*, 24 I. & N. Dec. at 378–79.

The authority to read the statute this way, according to the agency, comes from the "savings clause" at the very beginning of § 1182(a). This savings clause states that "[*e*]*xcept as otherwise provided in this chapter*, aliens who are inadmissible . . . are ineligible . . . to be admitted to the United States."

-8-

§ 1182(a) (emphasis added).  In the BIA's view, § 1255(i)(1) falls within the scope of the savings clause and is thus an implicit waiver of the admissibility prerequisite.  *Briones*,  24 I. & N. Dec. at 364–65; *Mora*, 550 F.3d at 234.

For the other more specific paragraphs in § 1182(a), including § 1182(a)(9)(B)(i)(II) applying to Herrera, § 1255(i) does *not* ordinarily permit adjustment of status.  *See Lemus-Losa*, 24 I. & N. Dec. at 378–79.

The BIA explains this disparate treatment of the § 1182(a) provisions by noting that while § 1182(a)(6)(A)(i) applies *generally* to aliens who are present unlawfully, the other § 1182(a) provisions apply *specifically* to aliens present illegally who have also done something else—for example, they have repeatedly violated the immigration laws, § 1182(a)(9)(C), or (like Herrera) have accrued a certain period of unlawful presence, § 1182(a)(9)(B)(i)(II).  *See Briones*, 24 I. & N. at 365; *Lemus-Losa*, 24 I. & N. at 379; *Mora*, 550 F.3d at 236.

Whether § 1255(i) should be read as (1) waiving inadmissibility only under the general § 1182(a)(6)(A)(i), or (2) waiving inadmissibility under the more specific § 1182(a)(9)(B)(i)(II) as well, cannot be inferred clearly from the text of the immigration laws alone.  The question is whether the BIA's interpretation of § 1182(a) in *Lemus-Losa* is "arbitrary, capricious, or manifestly contrary to the statute."  *See Chevron*, 467 U.S. at 844.

In *Lemus-Losa*, the BIA gave three primary reasons to interpret § 1255(i) as allowing aliens covered by the general § 1182(a)(6)(A)(i) to apply for adjustment of status, but not aliens covered by the more specific § 1182(a)(9)(B)(i)(II).

First, the BIA noted the purpose of § 1182(a)(9)(B)(i)(II) was to "punish individuals who seek admission . . . *after having previously accrued a period of unlawful presence*." *Lemus-Losa*, 24 I. & N. Dec. at 379 (emphasis in original). According to the BIA, this suggests Congress went out of its way to distinguish between those simply "present in the United States without being admitted," § 1182(a)(6)(A)(i), and those who, under § 1182(a)(9)(B)(i)(II), have accrued a longer period of unlawful presence. *Id.*

Second, distinguishing between §§ 1182(a)(6)(A)(i) and 1182(a)(9)(B)(i)(II) is "consistent with the overall purpose of section [1182](a)(9) 'to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully admitted thereafter.'" *Id.* (quoting *In re Rodarte*, 23 I. & N. Dec. 905, 909 (BIA 2006)). Thus, making a § 1255(i) adjustment unavailable to aliens who are inadmissible under § 1182(a)(9)(B)(i)(II) accounts for the structure and language of the act.

Third, this interpretation is faithful to Congress's overall scheme of expressly waiving inadmissibility grounds where such waivers are intended. The BIA noted that "in every case where Congress has extended eligibility for

-10-

adjustment of status to inadmissible aliens, it has done so unambiguously."
*Lemus-Losa*, 24 I. & N. Dec. at 378 (citing *Briones*, 24 I. & N. Dec. at 367).
Congress's "failure to expressly provide an exception to the section
[1182](a)(9)(B)(i)(II) inadmissibility" was, in the BIA's opinion, "significant."
*Id.* For example, *Lemus-Losa* noted that on two separate occasions Congress had
"expressly provided" for a waiver of § 1182(a)(9)(B) inadmissibility. *Id.* (citing
the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-
100, 111 Stat. 2192, *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997), and
the Haitian Refugee Immigration Fairness Act of 1998, tit. IX, Pub. L. No. 105-
277, 112 Stat. 2681-538). "The fact that Congress deemed it necessary to provide
such waivers" for these particular adjustment applicants, *Lemus-Losa* observed,
"bolster[ed]" the view that inadmissibility under § 1182(a)(9)(B)(i)(II) does not
qualify one for a § 1255(i) adjustment of status. *Id.*

The BIA's reasoning in *Lemus-Losa* was neither arbitrary, capricious, nor
manifestly contrary to the statute. As the agency's analysis indicates, the
language and structure of the relevant statutes—along with Congress's specific
waivers in certain instances—reasonably suggest Congress considers aliens who
accrue a period of unlawful presence more culpable than those immigration
violators who do not, and are thus less deserving of relief under § 1255(i).
Hence, we do not think the agency unreasonably interpreted § 1255(i) as
extending relief to aliens who are inadmissible under § 1182(a)(6)(A)(i), but not

to those who are also inadmissible under § 1182(a)(9)(B)(i)(II). *See Mora*, 550 F.3d at 239 (finding the same with regard to the nearby § 1182(a)(9)(C)(i)(I)); *Ramirez-Canales*, 517 F.3d at 910 (same); *Mortera-Cruz*, 409 F.3d at 255–56 (same).

To the extent Herrera argues that our opinion in *Padilla-Caldera v. Gonzales*, 453 F.3d 1237 (10th Cir. 2005), requires that we find Herrera eligible for adjustment of status under § 1255(i), we find the authority distinguishable. *Padilla-Caldera* addressed a separate provision—§ 1182(a)(9)(C)(i)(I)—and did not have the benefit of guidance from the BIA in resolving the statutory ambiguity. Significantly, the BIA has specifically disagreed with *Padilla-Caldera* in its subsequent decision in *Briones*, 24 I. & N. Dec. 355 (finding adjustment of status under § 1255(i) unavailable to aliens inadmissible under § 1182(a)(9)(C)(i)(I)). Even if *Padilla-Caldera* were directly on point, it would be of limited value in light of the BIA's later statutory guidance. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (holding a circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided the court's earlier precedent was an interpretation of a statutory ambiguity); *see also* Sarah Ignatius & Elisabeth S. Stickney, *Immigration Law and the Family* § 12:25 n.5 (2009) (noting that "[b]efore relying on

-12-

*Padilla-Caldera*, practitioners should make sure it is still good law as the Tenth Circuit may revisit this issue in light of the . . . *Briones*[] decision").

Because Herrera does not dispute his inadmissibility pursuant to § 1182(a)(9)(B)(i)(II), and because the BIA's determination that such inadmissibility precludes § 1255(i) relief was reasonable under *Chevron*, the agency did not err in denying Herrera's application for adjustment of status.

## B.  Equal Protection

The government contends Herrera has waived his equal protection argument because his brief fails to comply with Federal Rule of Appellate Procedure 28(a). In particular, it argues, the brief lacks an argument setting forth his contentions and the appropriate supporting authorities.  *See* Fed. R. App. P. 28(a)(9)(A).

We find these deficiencies fatal to Herrera's equal protection claim.  Equal protection comprises a substantial portion of the opening brief, but nowhere does Herrera articulate his specific contentions, the action he is challenging, or how the government specifically violated his rights.  Instead, the brief cites to cases only tangentially relevant to the one before this court, reviews irrelevant allegations of immigration abuses by the government, and makes policy arguments beyond the court's purview.  We have previously declined "[to] make arguments for [the appellant] that it did not make in its briefs," *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001), and decline to do so here as well.  Herrera has therefore waived his equal protection argument.  *See*

*Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (an issue "insufficiently raised in the opening brief is deemed waived").

## C. The § 1182(a)(9)(B)(v) Hardship Waiver

Herrera also contends the BIA erred in reversing the immigration judge's grant of a waiver under § 1182(a)(9)(B)(v). This provision permits waiving inadmissibility when an alien has a United States citizen family member and refusal of admission would result in "extreme hardship" for that family member. § 1182(a)(9)(B)(v). The government argues this court lacks jurisdiction to review the BIA's decision to deny Herrera's request for waiver, and we agree.

Our jurisdiction in this case arises under 8 U.S.C. § 1252(a), but it is limited in several aspects. The language of § 1182(a)(9)(B)(v) itself reflects one of these limitations. Under the statute, "[t]he [BIA] has *sole discretion*" to invoke a waiver, and "[*n*]*o court* shall have jurisdiction to review a decision or action by the [BIA] regarding a waiver under this clause." *Id.* (emphasis added).

The INA's general jurisdiction statute would yield the same result, as it prohibits courts from reviewing "any . . . decision or action of the [BIA] . . . the authority for which is specified under this subchapter to be in the discretion of the [BIA]." § 1252(a)(2)(B)(ii). We have construed this restriction broadly, finding that it "applies to all discretionary decisions enumerated in the relevant subchapter of Title 8 regardless of the context in which the decisions were made." *Yerkovich v. Ashcroft*, 381 F.3d 990, 994–95 (10th Cir. 2004).

-14-

In light of these restrictions on our jurisdiction, we decline to address Herrera's challenge to the BIA's waiver determination.

### III. Conclusion

In sum, we DENY the government's motion to dismiss under Federal Rule of Appellate Procedure 31 for failure to prosecute. We also find the BIA interpreted ambiguous provisions of the immigration laws in a reasonable way, entitling *Lemus-Losa* to *Chevron* deference and rendering Herrera ineligible for a § 1255(i) adjustment of status. Finally, we decline to address Herrera's equal protection and § 1182(a)(9)(B)(v) waiver arguments. Herrera's petition for review is therefore DENIED.