FILED
United States Court of Appeals
Tenth Circuit

June 2, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SENYANGE AHMED,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 09-9540
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TACHA**, Circuit Judges.

---

Petitioner Senyange Ahmed seeks review of a Board of Immigration

Appeals (BIA) order affirming an immigration judge's (IJ) denial of his

applications for asylum, restriction on removal, and relief under the United

Nations Convention Against Torture (CAT). Ahmed concedes that his request for

asylum was filed inexcusably late, and he does not contest that portion of the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BIA's order. He claims, however, that he is entitled to restriction on removal because he has demonstrated a likelihood of persecution and torture if he returns to his native Uganda.[1] Because the record does not compel that conclusion, we exercise our jurisdiction under 8 U.S.C. § 1252(a) to deny the petition.

## Background

Ahmed came to the United States on a non-immigrant visa in 1995. In 2004, the government discovered he had overstayed his visa and initiated removal proceedings against him. Conceding that he was removable, Ahmed filed an application for asylum and restriction on removal, claiming he had been persecuted by the Ugandan government. At a hearing before the IJ, Ahmed testified that his family was affiliated with the Uganda People's Congress (UPC), a political party opposed to the ruling National Resistance Movement (NRM), led by President Yoweri Museveni. He testified that his father was actively involved with UPC throughout his childhood, and that both he and his older brother, Moses

---

[1] Ahmed has been removed from the United States and is currently in the Netherlands. Because of the collateral consequences arising from the removal order, however, which include barring him from reentering the United States for several years, his petition for review is not moot. *See Tapia Garcia v. INS*, 237 F.3d 1216, 1217 (10th Cir. 2001) (holding that deportation does not foreclose judicial review so long as petition continues to present a case or controversy); *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339 n.4 (3d Cir. 2008) ("Because a final order of removal creates sufficient collateral consequences, Petitioner's removal does not moot her petition for review."(internal quotation marks omitted)).

Ddamulira, were youth party organizers.[2]  Ahmed claims that in the 1990s, every member of his immediate family was persecuted on account of the family's connection to the UPC.

His brother Moses was allegedly arrested and tortured by members of the NRM in 1992.  Moses escaped his captors and fled to England, where he was ultimately granted an indefinite right to remain.  Testifying at Ahmed's hearing by phone, Moses claimed that he had been a spy for the UPC and that he became romantically involved with the daughter of an NRM commander in order to gather information for the UPC.  When his girlfriend became pregnant, her father allegedly discovered the affair and had Moses arrested.  Moses testified he was detained and tortured for several days before making his escape to England.  He never returned to Uganda.

Ahmed testified that the NRM arrested him on three separate occasions, beginning in 1992, shortly after his brother's escape.  Although he now claims he was arrested and tortured on account of his politics, at his hearing, Ahmed testified that the NRM arrested him the first time in order to find his brother:

> [O]ne time they arrested me when I was coming from my soccer
> practice due to the fact that they were looking for my brother.  He
> had got a commander's daughter pregnant, so they wanted to know
> where he [was].  So, they arrested me, they tortured me.

---

[2]     Ahmed does not share the same last name as his brother and sister, both of whom use Ddamulira.  This matter triggered credibility concerns for the IJ, but it is irrelevant to our disposition because, as noted below, the BIA affirmed the IJ's decision without resolving the credibility issue.

R. at 207; *see also id.* at 208 (Ahmed testifying, "[t]hey told me they were looking for my brother"). Ahmed claims he was held for about a week, and although he was severely beaten, he did not disclose that his brother was in England. NRM authorities arrested him a second time in 1993. Ahmed testified that he was with his older sister, Shamim Ddalumira, who was also arrested. The NRM picked them up this time because "they were still looking for [his] brother, and then due to the ties of the family to the UPC Party." *Id.* at 211. He went on to clarify, however, that the NRM's motivation for the second arrest was to find Moses:

> So that's why we [were] arrested and tortured. They [were] looking for my brother. I couldn't tell where my brother was, so we [were] taking up all the beating for my brother and the torture, everything.

*Id.* When asked specifically why the NRM tortured him, Ahmed replied that they wanted him to confess his brother's whereabouts. They wanted him "[t]o tell them where he was." *Id.* at 212. The third and final arrest allegedly occurred between 1994 and 1995. At the hearing, Ahmed testified that this arrest was motivated by the "[s]ame thing, my brother. And then the ties to the UPC Party." *Id.* at 217. Shortly after being released from custody after this arrest, Ahmed fled to the United States.

Testifying by phone from her home in Canada, Ahmed's sister, Shamim, stated that she too fled Uganda out of fear of persecution by the NRM. She corroborated Ahmed's story of their joint arrest, although she believed it occurred

-4-

sometime in 1993 or 1994. Shamim testified that during her detention she "was raped and tortured because of [her] parents' involvement in their political party, because they were members of the UPC." *Id.* at 250. She claimed she was ultimately forced to flee in 1999 after NRM authorities discovered she was harboring a UPC member in her house. Shamim has never returned to Uganda and is now a Canadian citizen. All three siblings also testified that the Ugandan army burned down their childhood home in 1994 and killed their parents in 2000. They testified it would not be safe for Ahmed to return to Uganda because he would be viewed as a traitor to the current regime.

*IJ and BIA Decisions*

At the conclusion of the hearing, the IJ delivered an oral decision rejecting Ahmed's petition based on an adverse credibility finding and his conclusion that Ahmed's story, even if true, did not establish persecution based on a protected ground. *See* 8 U.S.C. § 1231(b)(3) (protecting aliens from persecution based on "race, religion, nationality, membership in a particular social group, or political opinion"). The IJ explained that according to Ahmed's own testimony, he was arrested and harmed by the Ugandan army because "[t]he government was looking for his brother whom they regarded as a political enemy." R. at 115. Thus, the IJ reasoned, Ahmed was not mistreated because of his political opinion or membership in his family, and therefore he was not entitled to restriction on

-5-

removal under § 1231(b)(3). The IJ denied relief under the CAT without additional reasoning.

The BIA affirmed the IJ's decision, concluding Ahmed failed to establish past persecution or a likelihood of future persecution based on a protected ground.[3] The BIA acknowledged that family relationship or kinship ties can, under certain circumstances, form the basis of a particular-social-group claim. But it declined to so categorize Ahmed's claim because, by his own admission, his mistreatment was motivated by the Ugandan government's desire to find his brother, and not because of his relationship to his brother.

> [T]he evidence does not show that the respondent was detained and beaten as a form of punishment because of his relationship to his brother. Rather, it supports the conclusion that the respondent was detained and beaten because the authorities wanted information regarding the respondent's brother.

R. at 34. The BIA emphasized that in order to obtain relief, an alien must provide some evidence, beyond mere speculation, that his persecution was tied to a protected ground. And it rejected Ahmed's speculation that his ties to the UPC party motivated his persecutors, noting that he did not testify he was beaten for this reason. "Rather . . ., the respondent testified that he was beaten because the authorities wanted to know the whereabouts of his brother." *Id.* The BIA also

---

[3]    The BIA declined to address Ahmed's challenge to the IJ's adverse credibility finding, concluding the issue was not dispositive because his story, even if true, did not entitle him to the relief requested.

affirmed the IJ's decision to deny CAT relief, because Ahmed "presented no arguments on appeal that would cause [it] to reverse" this determination. *Id.*

Ahmed claims the BIA committed reversible error in requiring him to demonstrate that his persecution was a *form of punishment*, arguing that "[n]either the statute nor regulations governing restriction on removal mention (let alone require) any intent to inflict 'punishment' as an element." Pet'r Op. Br. at 20. He also claims the BIA failed to properly consider his claim for relief under the CAT and argues generally that the BIA's decision was not sufficiently detailed to allow appellate review.

## Discussion

*Standard of Review*

"To qualify for restriction on removal, an alien must demonstrate that his life or freedom would be threatened in the proposed country of removal because of his race, religion, nationality, membership in a particular social group, or political opinion." *Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (internal quotation marks and brackets omitted). If an applicant can demonstrate past persecution based on a protected ground, it is presumed that his life or freedom would be threatened in the future on the same basis. *Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005). By contrast, an alien seeking relief under the CAT need not show that the persecution will occur on account of a statutorily protected ground. But he must show that he has a greater chance of being persecuted than

not, and that "the persecution would be so severe that it would rise to the level of torture." *Id.* at 1196.

Because the BIA issued a reasoned, albeit short, opinion in this case, we limit our review to the reasons expressed therein. We may, however, consult the IJ's opinion to the extent it enhances our understanding of the BIA's reasoning. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1203-04 (10th Cir. 2006) (explaining different methods of BIA decision making and implications for judicial review). We review the BIA's factual findings for substantial evidence, rejecting them only if "the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr*, 474 F.3d at 788-89 (internal quotation marks omitted). We review legal determinations de novo. *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009), *petition for cert. filed* (U.S. Jan. 25, 2010) (No. 09-9834).

*Restriction on Removal*

In this case, the BIA made a factual determination that Ahmed was arrested and beaten, not because of his political opinion or membership in his family, but because the authorities sought information concerning his brother. To reverse this finding, we would have to say that the evidence not only supports another conclusion, but compels it. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). Ahmed argues that the evidence supports a reversal, even ignoring his own testimony and the attendant credibility issues. He points out that both his brother

and sister testified that his family was considered a political enemy, and he argues this fact is further bolstered by the burning of his family's home and the murder of his parents. But the BIA made no findings concerning his family's political views or the extent to which those views caused them to suffer. Rather, it found, based on Ahmed's own testimony, that his mistreatment stemmed from his refusal to divulge his brother's whereabouts, which is neither a political belief nor an immutable characteristic. We conclude that substantial evidence supports this determination. That is, we agree that Ahmed's own testimony was fatal to his claim. Even if his ties to the UPC played some part in his arrest, Ahmed consistently testified that the beatings and prolonged detention occurred because of his refusal to tell the authorities where his brother was. Furthermore, even if his brother was wanted for political reasons–a finding the evidence does not compel–Ahmed has cited no authority that would protect him from removal based on past mistreatment for failing to divulge his brother's whereabouts.

We also reject Ahmed's argument that the BIA wrongly required him to show that his mistreatment constituted a "form of punishment." Read in context and alongside the IJ's parallel reasoning, these words added no additional requirement to Ahmed's already heavy burden. Restriction on removal requires an alien to show that his "life or freedom would be threatened . . . *because of* [his] . . . membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A) (emphasis added). In our view, the BIA's denial of relief based

on Ahmed's failure to show he was mistreated "as a form of punishment," simply reflects the statutory requirement that the alien's mistreatment be tied to a protected ground.

*Relief under the CAT*

Finally, we decline Ahmed's invitation to revisit his claim for relief under the CAT. He argues the BIA erred in rejecting this claim because protection under the CAT does not depend on the torture occurring on account of a statutorily protected ground. This may be so, but Ahmed's failure to make this point to the BIA precludes our consideration of it.

> We have recognized that neglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review. Accordingly, we have jurisdiction only over those claims that were presented to the BIA and were properly appealed to this court . . . .

*Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007) (citation and internal quotation marks omitted). A review of the administrative record reveals that Ahmed made no argument specific to his CAT claim in his brief to the BIA. The BIA therefore upheld the IJ's denial of that claim, and we are not at liberty to overturn that decision.

**Conclusion**

The petition for review is DENIED.  Ahmed's motion to proceed *in forma pauperis* is GRANTED.

Entered for the Court


Mary Beck Briscoe
Chief Judge