**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MERCEDES ERCILIA RECINOS-
MARTINEZ; J.A.M., minor child,

Petitioners,

v.

WILLIAM P. BARR, United States
Attorney General,

Respondent.

No. 19-9560
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Mercedes Ercilia Recinos-Martinez, a native and citizen of El Salvador,

petitions for review of the Board of Immigration Appeals's (BIA) decision

dismissing her appeal from the Immigration Judge's (IJ) denial of asylum,

withholding of removal, and protection under the Convention Against Torture (CAT).

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition in part and dismiss in part for lack of jurisdiction.

## I. BACKGROUND

Petitioner arrived in the United States in February 2016, without valid immigration documents. An asylum officer determined Petitioner had a credible fear of returning to El Salvador and she was placed in removal proceedings, where she conceded removability, and applied for asylum,[1] withholding of removal, and CAT protection.

In a pre-hearing brief, Petitioner explained that after she and a friend witnessed a murder, they were both threatened, and her friend eventually disappeared. Petitioner maintained the threats amounted to persecution, and moreover, she feared future harm if she returned to El Salvador on account of her membership in a particular social group of "Salvadoran witnesses to a crime by gang members," and on account of her anti-gang political opinion, as manifested by her failure to "fully comply[] with the gang's demands." Admin. R. at 275.

At the merits hearing, Petitioner testified she left El Salvador in late January 2016, shortly after witnessing the murder. She recounted that while she, her son, and her friend Carla were out shopping, they saw two young men on a motorcycle, one of whom got off the motorcycle and shot a third young man. Petitioner believed the assailants were members of the Mara Salvatrucha gang (MS-13) because they were

---

[1] J.A.M. is Ms. Recinos-Martinez's minor son. As such, he is a derivative beneficiary of his mother's application for asylum. *See* 8 U.S.C. § 1158(b)(3).

2

wearing loose-fitting pants, long-sleeved shirts, and Adidas footwear. Petitioner, her son, and Carla were still on the scene when the police arrived but denied having seen anything. According to Petitioner, she was afraid to talk to the police because they would not be able to protect her, "[a]nd besides, . . . then they would start asking where and who and that would just cause more trouble." *Id*. at 83. As to the MS-13 gang members, Petitioner testified she believed they would try to harm her "[b]ecause we were the only key witnesses who would be able to get them imprisoned because we were the ones who . . . witnessed what happened." *Id*. at 84.

Two days following the incident, Petitioner said "some threats started going directly to [Carla] through [telephone] messages and they were telling her that she should tell me to be careful because we were going to pay." *Id*. The threats continued until Carla changed her telephone number. About five days later Carla disappeared; however, before she disappeared, Carla told her parents to tell Petitioner she needed to "do something or else they were going to kill [Petitioner] and [also] kill [her] child." *Id*. at 85-86.

Several days later, Petitioner was walking to the store when some individuals in a car began to follow her. They waited outside while she shopped and then resumed following her as she walked home. Petitioner believed one of the men in the car was the murderer, and she ran to and hid in a neighbor's house. A week later, Petitioner and her minor son left El Salvador.[2]

---

[2] Petitioner's husband was already living in the United States, having entered the country without inspection in December 2015.

The IJ found Petitioner's testimony credible but concluded she had not carried her burden of proving she was eligible for asylum, withholding, or protection under the CAT. The BIA dismissed Petitioner's appeal. This petition for review followed.

## II. DISCUSSION

### A. Scope and Standard of Review

A single-member BIA order "constitutes the final order of removal," and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* For example, we will consult the IJ's decision "where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion" or "where the BIA reasoning is difficult to discern and the IJ's analysis is all that can give substance to the BIA's reasoning in the order of affirmance." *Id.*

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). Under the substantial-evidence standard, "the BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (brackets and internal quotation marks omitted).

4

**B.** *Pereira* **Claim**

Petitioner filed her appeal at the BIA in February 2018. While the appeal was pending, and more than a year before the BIA issued its decision in July 2019, the Supreme Court decided *Pereira v. Sessions*, ___ U.S. ___, 138 S. Ct. 2105 (2018), which holds that a Notice to Appear (NTA) that fails to state the time and place of removal proceedings is ineffective to trigger a statutory stop-time rule, *id*. at 2110. According to Petitioner, *Pereira* also stands for the proposition that a defect in an NTA is jurisdictional, that is, an NTA that fails to state the time and place of removal proceedings is not only ineffective to trigger a stop-time rule, but also deprives the IJ of jurisdiction over the removal proceedings. Petitioner never raised this argument at the BIA.

Petitioner first raised her *Pereira* argument in this court in her opening brief, filed ten days *after* we decided *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1017-18 (10th Cir. 2019), which holds that a defect in an NTA is not jurisdictional. Petitioner fails to mention *Lopez-Munoz* or explain why it is not dispositive; instead, despite failing to raise a *Pereira* claim at the BIA, and contrary to our holding in *Lopez-Munoz*, she argues because the initial NTA did not specify the date and time of her removal hearing, the IJ lacked jurisdiction.

Petitioner's claim likely fails under *Lopez-Munoz*; however, because she never presented this argument to the BIA, it is administratively unexhausted, and we lack jurisdiction to consider it in the first instance on appeal:

5

> In light of [our decision in <u>Lopez-Munoz</u>], if we had discretion, we might decide that it would be most expedient for us to address [the] unexhausted <u>Pereira</u> argument now. Nevertheless, our cases make clear that we cannot [address the issue] because failure to exhaust an issue, as [8 U.S.C.] § 1252(d)(1) requires in the immigration removal context, deprives us of jurisdiction to consider that issue.

*Robles-Garcia v. Barr*, 944 F.3d 1280, 1284 (10th Cir. 2019) (internal quotation marks omitted).

## C. **Asylum and Withholding of Removal**

### i. *Legal Framework*

To succeed in her application for asylum and withholding of removal, Petitioner must prove she is eligible for this relief. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). To be eligible for asylum, Petitioner must prove she is a refugee, which requires her to establish she is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). For withholding, an applicant must prove a "clear probability of persecution on account of" one of the statutorily protected grounds. *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). "The burden of proof for [withholding] is higher than for asylum." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). Therefore, "[f]ailure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim." *Rodas-Orellana*, 780 F.3d at 987.

6

The protected ground must be "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see also Rivera-Barrientos*, 666 F.3d at 646 ("For persecution to be 'on account of' a statutorily protected ground, the victim's protected characteristic must be central to the persecutor's decision to act against the victim" (internal quotation marks and brackets omitted)); *Dallakoti*, 619 F.3d at 1268 (accepting the BIA's interpretation of "one central reason" as meaning "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment" and "cannot be incidental, tangential, superficial, or subordinate to another reason for harm") (quoting *Matter of J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007)).

## ii. *Persecution*

The IJ found, and the BIA agreed, that vague threats from members of MS-13 to a friend and following Petitioner home from the store did not amount to persecution. But we do not address the issue because it does not affect the outcome. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertakes to decide issues that do not affect the outcome of a dispute."). Instead, we can resolve the case on the grounds that the alleged past persecution and fear of future persecution were not "on account of" Petitioner's political opinion or membership in a particular social group.

7

### iii. *Political Opinion*

The government contends Petitioner has waived any argument that she suffered past persecution or had a fear of future persecution on account of *her political opinion*. In particular, the government notes the lack of any argument setting forth Petitioner's contentions and supporting authorities for this proposition in her opening brief as required under Federal Rule of Appellate Procedure 28(a)(8)(A). We agree the issue is waived. *See Herrera-Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009) (citing Fed. R. App. P. 28(a) and explaining that an argument insufficiently raised in the opening brief is waived).

### iv. *Particular Social Group*

We further agree with the government that substantial evidence supports the agency's finding that Petitioner was neither harmed nor had a well-founded fear of future harm on account of her membership in a particular social group, defined as Salvadoran witnesses to gang crime.

In her opening brief, Petitioner makes several inaccurate statements about the agency's decision and the law. First, she maintains the BIA failed to consider she was targeted by MS-13 because she witnessed the murder. This contention is demonstrably incorrect, as discussed *infra*.

Second, Petitioner argues "if personal hostility precluded asylum eligibility, no one in the world would qualify for asylum," and therefore the BIA erred in its observation that "acts of common criminality or personal hostility committed by gang members in El Salvador . . . do not implicate asylum eligibility." Pet'r Br. at 42-43

(internal quotation marks omitted). Petitioner is mistaken. For example, in *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003), we upheld the agency's denial of asylum where the applicant failed to distinguish the harm about which she testified "from acts of common criminality or personal hostility that do not implicate asylum eligibility."

Last, Petitioner maintains the BIA erred in failing to determine whether her proposed social group is legally cognizable. There was no error. *See Bagamasbad*, 429 U.S. at 25 ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Matter of A-B-*, 27 I. & N. Dec. 316, 340 (A.G. 2018) ("Of course, if an alien's asylum application is fatally flawed in one respect . . . the [BIA] need not examine the remaining elements of the asylum claim."), *abrogated on other grounds by Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018). Further, because the BIA did not address the issue, the IJ's determination that Petitioner's proposed group was not cognizable is not before this court on the petition for review. *See Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007) (explaining that this court does not affirm on grounds raised by the IJ unless the BIA also relies on the same grounds in its decision).

Relatedly, Petitioner has filed a "Motion For Judicial Notice Under Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 44.1" (Motion), in which she asks this court to take judicial notice of (1) an excerpt from a Salvadoran witness protection law and (2) the U.S. State Department's 2018 report on human rights in El

Salvador. According to Petitioner, this court should take judicial notice of these materials as relevant to whether her proposed social group is cognizable. But as we explained, *supra*, our resolution does not turn on whether the proposed group is cognizable, and therefore the materials are irrelevant. In any event, our review is based "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(a).

Returning to the agency's decision, the IJ found Petitioner's particular social group was not cognizable, but assuming it was, the evidence established the MS-13 gang members were motivated by their interests in avoiding detection: "[W]hat the evidence in this case shows is that the gang members were . . . centrally motivated by their criminal incentives—to make sure [Petitioner] did not interrupt their criminal schemes, not because they perceived she belonged to a particular social group." Admin. R. at 38. This finding is supported by Petitioner's testimony. *See id*. at 84.

The BIA affirmed, noting that "even if [Petitioner's] proposed social group [was cognizable] . . . the record does not indicate that [Petitioner's] purported persecutors targeted her to punish her because of such membership. Instead, the record indicates that [Petitioner] fears being harmed by the gang members because [she] saw [them] murder a person." *Id*. at 4. Petitioner's "fears [of] becoming the victim of acts of common criminality or personal hostility committed by gang members in El Salvador . . . do not implicate asylum eligibility." *Id*.

The agency's factual findings are conclusive because no reasonable adjudicator would be compelled to reach a contrary conclusion. *See Rivera-*

10

*Barrientos*, 666 F.3d at 645.  And because Petitioner failed to meet her burden of proof for asylum, her claim for withholding necessarily fails.  *See Rodas-Orellana*, 780 F.3d at 987.

## D.  CAT Protection

Unlike asylum or withholding of removal, CAT protection does not require Petitioner to show that torture will occur on account of a statutorily protected ground. *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005).  Protection under the CAT requires Petitioner to show "that it is more likely than not that . . . he would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2). This torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).  Acquiescence requires that the public official have prior awareness of the activity and "thereafter breach his or her legal responsibility to intervene to prevent such activity."  8 C.F.R. § 1208.18(a)(7).  Willful blindness is the standard for acquiescence in this circuit.  *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013); *Cruz-Funez*, 406 F.3d at 1192.

But Petitioner cannot meet the willful-blindness standard with generalized evidence of gang violence, government corruption, or unsuccessful policing efforts. *See Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (no acquiescence where the government took steps—albeit less than entirely successful—to protect individuals targeted by Northern Irish loyalist paramilitary groups); *Cruz-Funez*, 406 F.3d at 1192 (holding that evidence of government corruption and underfunding

11

of police was insufficient to compel a conclusion of government acquiescence to criminal activity by a private individual). To show acquiescence, Petitioner must establish a "connection between [the men she fears] and the [Salvadoran] government, or awareness by any public official that [the men she fears] has threatened [her life.]" *Cruz-Funez*, 406 F.3d at 1192. "[S]tring[ing] [together a series] of speculative events in a country with violent incidents but a non-complacent government [is] insufficient." *Matter of J-F-F-*, 23 I. & N. Dec. 912, 918 n.4 (A.G. 2006).

The IJ found Petitioner's claim for CAT protection was speculative. As to whether it was more likely than not that Petitioner would be tortured upon her return to El Salvador, the IJ noted she: (1) "has not experienced past torture in her country"; (2) "has only been indirectly threatened by persons she believes to be gang affiliated;" and (3) has "not tr[ied] to relocate outside her neighborhood . . . where she witnessed the crime and felt threatened by the local gang members." Admin. R. at 40-41.

The IJ also found "insufficient evidence . . . to show the Salvadoran government would turn a blind eye to future torture inflicted by any criminal gang." *Id*. at 41. Here, the IJ noted Petitioner "never reported the murder she witnessed or the threats she felt to the police, which makes it impossible to know if her government would have intervened and investigated if she had reported any of the events that caused her to fear threatened." *Id*. "However, it seems likely her government would have responded appropriately and provided her with protection

12

since the police responded quickly to the scene of the murder and were investigating the crime." *Id*. Moreover, the IJ acknowledged

> [al]though the State Department's 2016 <u>Human Rights Report</u> for El Salvador and other evidence of record describes government corruption and other issues of concern, it also shows the law prohibits torture and documents significant efforts the Salvadoran government has made to curb the rates of criminal violence and to enhance enforcement of its laws designed to protect the victims of crime.

*Id*.

Citing "the lack of evidence showing that it is more likely than not that the [Petitioner] will be tortured upon her return to El Salvador, by or with the acquiescence (including willful blindness) of a government official or other person acting in an official capacity," *id*. at 5, the BIA affirmed the IJ's denial of CAT relief. The record does not demonstrate that any reasonable adjudicator would be compelled to come to a different conclusion. *See Rivera-Barrientos*, 666 F.3d at 645.

## III. CONCLUSION

The petition for review is denied, except for Petitioner's *Pereira* claim which is unexhausted and therefore dismissed for lack of appellate jurisdiction. We deny Petitioner's Motion.

Entered for the Court


Allison H. Eid
Circuit Judge

13