FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VILMA YANETH CARIAS-MEJIA;
KEVIN OBDALY ROMERO-CARIAS;
ILIANY MICHELL ROMERO-CARIAS;
CARLOS ANTONIO ROMERO-CARIAS,

    Petitioners,

v.

MERRICK B. GARLAND,
United States Attorney General,*

    Respondent.

No. 20-9581
(Petition for Review)

_____

**ORDER AND JUDGMENT\*\***
_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Vilma Yaneth Carias-Mejia and her three minor children, all citizens of

Honduras, petition for review of a final order of removal denying their applications

---

\* On March 11, 2021, Merrick B. Garland became Attorney General of the United States. Consequently, his name has been substituted for William P. Barr as Respondent, per Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for asylum and withholding of removal.  Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition.

## I.  Background

The Department of Homeland Security charged Carias-Mejia and her three children with removability for unlawful entry or presence in the United States. Carias-Mejia conceded the charges and applied for asylum and withholding of removal.[1]

At a hearing before an immigration judge (IJ), Carias-Mejia testified about the basis for her fear of returning to Honduras.  She and Obaydo Romero, who is now her husband, lived in Olanchito, Honduras.  In May 2014, Romero left Honduras and came to the United States with their oldest child.  Beginning in December 2014, while Carias-Mejia was still in Honduras, two men threatened her with machetes and robbed her six times.  She did not recognize the men, and they did not physically harm her, but each time, they threatened to kill her unless she gave them everything. Her children were with her on each occasion, and her sister-in-law was also with her on the first occasion she was robbed.  She would frequently see the men when she went downtown or shopping, and if she was not alone, they would just stare at her. Carias-Mejia therefore thought the men targeted her because she was a woman on her

---

[1] Carias-Mejia also applied for relief under the United Nations Convention for Torture, but the denial of that relief is not at issue in this appeal.  We therefore omit discussion of it.  Because Carias-Mejia's children are derivative beneficiaries of her applications, they are also parties to the petition for review.  But for convenience, we refer throughout our decision only to Carias-Mejia.

2

own. But she also acknowledged that some townspeople said the men might be part of the Martinez family, members of which had killed her husband's father in 2002. Thus, she believed the Martinez family wanted to hurt her family. The last of the six robberies occurred in December 2015, and Carias-Mejia came to the United States with her two youngest children a few months later. She claimed she could not safely relocate in Honduras because it is a small country.

Romero also testified about the conflict between the Romero and Martinez families. Romero said he left Honduras in 2014 out of fear that members of the Martinez family might kill him. Although he did not know why there was conflict between the two families, his father had always told him to "beware" of the Martinez family, which does "all the bad things in the town." R., Vol. I at 208. Romero believed the Martinez family had killed not only his father but also three of his male cousins (in 2003, 2008, and 2015) and his father's sister (in 2017). One of those cousins told him the Martinez family believed a Romero had killed a Martinez. Romero testified he cannot safely relocate in Honduras because it is a small country and the Martinez family might see his return as a threat. He admitted the Martinez family had not harmed any members of his extended family living outside of Olanchito or anyone related by marriage to the Romero family. Romero said he would return to Honduras with Carias-Mejia and their children if they are removed.

The IJ found Carias-Mejia and her husband credible but denied asylum and withholding of removal. The Board of Immigration Appeals (BIA) upheld that decision. The BIA first affirmed the IJ's determination that the threats and robberies

3

Carias-Mejia experienced met the common definition of robbery and were not severe enough to constitute past persecution. Accordingly, she was not entitled to a presumption of future persecution. The BIA also agreed with the IJ's assessment that Carias-Mejia had not demonstrated her membership in the particular social group of Honduran women was at least one central reason for the harm she experienced; instead, the two men who attacked her were motivated by either money or personal retribution based on the conflict between the Romero and Martinez families. The BIA further agreed with the IJ that Carias-Mejia had not met her burden to show that she could not avoid future persecution by relocating to another part of Honduras and that it would not be reasonable to expect her to do so. Accordingly, like the IJ, the BIA determined that Carias-Mejia had not met her burden of proof for asylum or the more stringent standard for withholding of removal.

## II. Discussion

Where, as here, a single BIA member issues a brief order deciding the merits of an appeal, the BIA's order is the final order of removal we review, but we may consult the IJ's decision if necessary to understand the grounds for the BIA's decision. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review legal conclusions de novo and factual findings for substantial evidence. *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008). Under the substantial-evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."

4

8 U.S.C. § 1252(b)(4)(B).  Whether a noncitizen has demonstrated persecution is a question of fact.  *Vicente-Elias*, 532 F.3d at 1091.

## A.     Asylum

An asylum applicant first has the burden of proving her eligibility for asylum by establishing that she is a refugee as defined in 8 U.S.C. § 1101(a)(42).  *Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004).  An asylum applicant can establish refugee status by demonstrating that she has a well-founded fear of future persecution or that she has suffered past persecution, which gives rise to a rebuttable presumption that she has a well-founded fear of future persecution.  *Id.* at 1233; *see also* 8 C.F.R. § 1208.13(b) (explaining eligibility requirements).[2]  The persecution must be "on account of race, religion, nationality, membership in a particular social group, or political opinion."  § 1101(a)(42).  If the applicant establishes refugee status, the Attorney General exercises discretionary judgment in either granting or denying asylum.  *Yuk*, 355 F.3d at 1233.

### 1.  Past persecution

Carias-Mejia first argues the BIA erred in finding that the threats and robberies were not severe enough to constitute persecution.  We disagree.  Although not

---

[2] An applicant may also establish eligibility for "humanitarian asylum based exclusively on past persecution so severe that it demonstrates compelling reasons for being unwilling to return."  *Vicente–Elias*, 532 F.3d at 1092 (internal quotation marks omitted); *see* 8 C.F.R. § 1208.13(b)(1)(iii) (describing eligibility requirements for a grant of asylum "in the absence of [a] well-founded fear of persecution").  We address it no further because Carias-Mejia makes no argument for its application here.

defined in the immigration laws, we have observed that "[p]ersecution is the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (internal quotation marks omitted). "Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (brackets and internal quotation marks omitted).

The BIA rejected Carias-Mejia's argument that when considered cumulatively, the threats by the two men who robbed her rose to the level of persecution. Like the IJ, the BIA noted that in *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003), we explained that "[t]hreats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." The BIA agreed with the IJ that the threats did not rise to that level. As the IJ more thoroughly explained, "the threats were contingent on compliance with a demand – in this case, an[] inappropriate and illegal demand – and were not threats to do harm beyond that which would be needed to accomplish the goal of completing a property crime." R., Vol. I at 67. The IJ therefore could not find that the threats rose "to the level of past persecution." *Id.*

Before us, Carias-Mejia argues that *Vatulev* is factually distinguishable because the threats there consisted only of phone calls unaccompanied by either a weapon or an immediate threat of injury or death. This distinction is immaterial

6

because both the BIA and the IJ relied on *Vatulev* only for its explanation of when threats might qualify per se as persecution. Carias-Mejia also argues "[i]t is hard to imagine threats that would be more immediate and menacing than these threats that were part of a pattern of stalking and targeting and caused [her] to fear for her life." Pet'rs' Opening Br. at 9 (internal quotation marks omitted). But this is merely her opinion; it does not demonstrate that any reasonable adjudicator would be compelled to disagree with the BIA's assessment. And *Vatulev*'s per-se-threat "standard is very difficult to satisfy. . . . '[O]nly rarely' do threats constitute actual persecution." *Matumona v. Barr*, 945 F.3d 1294, 1305 (10th Cir. 2019) (quoting *Vatulev*, 354 F.3d at 1210). As the IJ explained, the threats here were of the common variety attendant to accomplishing a property crime. And while obviously causing Carias-Mejia distress, reasonable adjudicators would not be compelled to conclude the threats were of the rare variety that causes persecution-level suffering or harm.

### 2. Internal relocation

Carias-Mejia next contests the BIA's finding that she did not demonstrate the required nexus between the harm she experienced and a protected ground, namely, her proposed social group of Honduran women. We need not reach this issue because she has not challenged the BIA's finding that she could avoid future persecution by relocating in Honduras.

"An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the

7

applicant to do so." 8 C.F.R. § 1208.13(b)(2)(ii). "In cases [like this one] in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecution is by a government or is government-sponsored." *Id.* § 1208.13(b)(3)(i).

The BIA agreed with the IJ that Carias-Mejia did not meet this burden, finding that she could avoid the harm she fears by relocating somewhere in Honduras other than Olanchito and that, under all of the circumstances, it was reasonable for her to do so. In support, the BIA noted that Carias-Mejia was not aware if the Martinez family had threatened or harmed any members of the Romero family outside of Olanchito and that she had "not established that the Martinez family operates throughout the country." R., Vol. I at 5-6.

Carias-Mejia has not addressed this finding, so she has waived review of it. *See Herrera-Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009) (deeming waived an issue not raised in an opening brief). Consequently, the BIA's unchallenged finding on internal relocation precludes her from showing a well-founded fear of future persecution regardless of whether the BIA erred with respect to the nexus finding. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (explaining that the failure to challenge an agency finding that is an independently sufficient basis for the denial of relief forecloses success on appeal regardless of the merits of an alternative ground).

8

**B.** **Withholding of removal**

Because Carias-Mejia fails to demonstrate a well-founded fear of persecution under asylum standards, she necessarily fails to meet the higher standard for withholding of removal. *See Uanreroro*, 443 F.3d at 1202.

### III. Conclusion

The petition for review is denied.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge